UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re                                                                         Chapter 7

SONA MOBILE HOLDINGS CORP.,                          Bankr. Case No. 09-14577
                                                                              (Bankr. D. Nev.)
                      Debtor.
-----------------------------------------------------------x

CORY et al.,

      Plaintiffs,

   -v-                                                                      No. 13CV04702-LTS-DCF

EBET LIMITED et al.,

      Defendants.
----------------------------------------------------------- x

MEMORANDUM OPINION AND ORDER

Plaintiffs Timothy S. Cory ("Cory"), William A. Leonard ("Leonard"), and Lenard E. Schwartzer ("Schwartzer") are the Chapter 7 bankruptcy trustees of Sona Mobile Holdings Corp. ("Holdings"), Sona Innovations, Inc. ("Innovations"), and Sona Mobile, Inc. ("Mobile" and all collectively, "Plaintiffs"), respectively.  (Second Amended Complaint ("SAC") at 1.)  Plaintiffs assert claims against Defendants eBet Limited ("eBet Limited") and eBet Services Pty. Ltd. ("ESPL" and collectively, "Defendants" or "eBet") for breach of contract and breach of the implied duty of good faith and fair dealing.

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the SAC for lack of standing insofar as it asserts any claims by Innovations and Mobile, to dismiss the claim for breach of the implied duty of good faith and fair dealing in its entirety, and to dismiss the breach of contract claim insofar as it relates to anything other than the alleged

failure to reimburse certain lease costs. The Court has jurisdiction of this action under 28 U.S.C. § 1334.

The Court has reviewed thoroughly the submissions of the parties and, for the following reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

Unless otherwise indicated, the following facts are drawn from the SAC and, except insofar as they are specifically characterized herein as allegations, are assumed to be true for the purposes of this motion. Holdings, a public company that is no longer in business, conducted its operations through its wholly owned subsidiaries, Mobile and Innovations. (SAC ¶¶ 3, 5, 14.) Holdings, Mobile, and Innovations operated in the gaming industry, and Mobile and Innovations developed, marketed and sought to sell gaming devices and software. (Id. ¶¶ 13, 15-19.) Defendant eBet Limited is, similarly, a company that develops gaming system products and internet based gaming and wagering services. (Id. ¶ 20.)

In 2007 Holdings, Mobile, and Innovations began experiencing financial difficulties. (Id. ¶ 21.) In its 2007 Annual Report, Holdings stated that it "would need additional financing to continue its operations past May 2008." (Id.) In light of this need, on August 22, 2008, Mobile and Innovations entered into a Licensing and Distribution Agreement ("LDA") with Defendants, in which eBet agreed to enter into a Master Services Agreement ("MSA") – which is referenced in the LDA and which references the LDA – with Holdings. (Id. ¶ 22, 24.) On August 25, 2008, Holdings and eBet formally entered into the MSA, under which eBet agreed to provide Holdings with, inter alia, advisory services (MSA § 3.1), software development services (MSA § 4.1), and software maintenance services (MSA § 5.1), in

exchange for certain fees.  (SAC ¶ 23.)  Plaintiffs allege that Mobile and Innovations were intended third-party beneficiaries of the MSA and that Holdings would not have entered into the MSA and would not have been able to provide its services under the MSA but for its operational relationship with Innovations and Mobile, which were parties to the related LDA.  (Id. ¶ 25.)

Pursuant to section 7.1 of the MSA, Defendants were given the right to designate the CEO of Holdings.  (Id. ¶ 27.)  Defendants appointed Anthony P. Toohey ("Toohey"), the Managing Director and CEO of eBet Limited, as President and CEO of Holdings.  (Id. ¶ 28.)  Toohey acted as liaison between eBet and Holdings and reported on the projects under development by Mobile and Innovations, which, as CEO of Holdings, he oversaw.  (Id. ¶¶ 29-30.)  Toohey also received regular updates regarding the financial status of Holdings, Mobile, and Innovations and made fund expenditure decisions.  (Id. ¶ 31.)  "Toohey understood that Sona [Holdings, Mobile, and Innovations] lacked the resources to continue developing the Sona Products," but, as CEO of Holdings, he continued to instruct Mobile and Innovations to develop products to their financial detriment.  (Id. ¶¶ 32-33.)  Toohey knew "that eBet was required to provide Sona with advisory, software maintenance, and software design services."  (Id. ¶ 32.)

Holdings fulfilled its obligations under the MSA by providing eBet with regular updates concerning the development of products, employee information, and costs of work performed under the MSA.  (Id. ¶ 34.)  eBet responded to the updates by providing instruction, comment, and direction to Holdings regarding Mobile's and Innovations's ongoing and pending projects under the direction of Toohey, but did not provide the services it had agreed to provide under sections 3.1, 4.1, and 5.1 of the MSA.  (Id. ¶¶ 35-36.)  Instead, under the direction of Toohey, Mobile and Innovations provided the services that eBet was obligated to provide under the MSA, thus leading Holdings and its subsidiaries to incur costs for advisory, software

development, and software maintenance services.  (Id. ¶ 37.)  Defendants were able to accomplish this, Plaintiffs allege, by not hiring staff from Mobile or Innovations, as Plaintiffs had expected them to do.  (Id. ¶ 39.)  Plaintiffs acknowledge, however, and section 8.1 of the MSA provides, that Defendants had the right, but not the obligation, to hire staff from Mobile and Innovations.  (Id.)  Plaintiffs allege that Defendants agreed to reimburse Holdings for "its costs incurred under the MSA (the 'Chargeback Costs') . . . [which] included, but were not limited to, the requirement for eBet to reimburse Sona Holdings for costs incurred with respect to leased equipment under section 10.1 of the MSA."  (Id. ¶ 26.)  Plaintiffs allege that "eBet . . . agreed to compensate Sona for its employee and personnel costs relating to software development and maintenance, including the costs of employing [certain] Canadian technical developers" instead of hiring staff from Mobile and Innovations.  (Id. ¶ 41.)  The only specific cost reimbursement provision of the MSA relates to equipment lease expenses.  (MSA § 10.1.)  Plaintiffs allege that eBet has not reimbursed Holdings for any of the foregoing costs.  (SAC ¶¶ 43, 46.)

On or around February 24, 2009, Holdings Vice President Kimberly Stein ("Stein") advised Toohey, in his capacity as President and CEO of Holdings, that eBet's obligation to reimburse of Holdings for its costs under the MSA had come due.  (Id. ¶ 47.)  On March 10, 2009, Toohey responded that, other than the equipment reimbursement costs, eBet was not obligated to provide any other payments under the MSA.  (Id. ¶¶ 49-50.)  On the same day, Stein responded, informing Toohey that Holdings would not be able to continue operations after April 2009 if eBet did not pay the Chargeback Costs.  (Id. ¶ 51.)  On March 12, 2009, Holdings's Board of Directors voted to declare eBet in breach of the MSA.  (Id. ¶ 52.)

On March 30, 2009, Holdings, Mobile, and Innovations each separately filed

voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Nevada. (Id. ¶¶ 1-6, 53.)  The United States District Court for the District of Nevada withdrew the reference of this adversary proceeding, and on July 5, 2013, ordered that venue be transferred to this Court pursuant to the choice of law and forum selection clauses of the MSA.  (Id. ¶ 11; MSA § 27.)

DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, a plaintiff must plead sufficient "facts[, for each claim asserted,] to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678.  In considering the motion, the court must draw all reasonable inferences in favor of the plaintiff.  Id. at 679.  However, while for the purposes of a motion to dismiss, the facts alleged in the plaintiff's complaint are accepted as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 678 (quoting Twombly, 550 U.S. at 555).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Id. (quoting Twombly, 550 U.S. at 555) (internal quotations omitted).  In determining the sufficiency of a complaint, the court considers the content of the complaint and may also consider documents that are appended to or integral to the complaint.  See Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004) ("Consideration is limited to the facts alleged in the complaint and any documents attached to the complaint or incorporated by reference.").

In connection with this motion practice, the Court has considered the copies of the

MSA and other documents that are appended to the SAC. The Court has not considered an additional affidavit, form 8-K financial report, and additional MSA-related documentation that were included in Plaintiffs' opposition submission.

Standing of Innovations and Mobile

Defendants seek the dismissal of the SAC insofar as it purports to assert claims on behalf of Mobile and Innovations, noting that the Claims for Relief only allege damages and assert claims on the part of Holdings, while the Prayer for Relief is asserted on behalf of "Plaintiffs" (see SAC ¶¶ 58-59, 66-67 and pp. 12-13), and arguing that Mobile and Innovations were neither parties to nor third-party beneficiaries of the MSA. The SAC names the Chapter 7 trustees of Mobile and Innovations as parties to the action and alleges that those entities were intended third-party beneficiaries of the MSA. "Under New York law, a third party may enforce a contract when 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 52 (2d Cir. 2012) (quoting Levin v. Tiber Holding Corp., 277 F.3d 243, 248 (2d Cir. 2002) (quoting Restatement (Second) of Contracts § 302)). Thus, a party may only assert a contract claim if it is an intended third-party beneficiary of the relevant contract. Flickinger v. Harold C. Brown & Co. Inc., 947 F.2d 595, 600 (2d Cir. 1991).

New York has adopted the Restatement (Second) of Contracts's standard for third-party beneficiary status. Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 485 N.E.2d 208, 212, 66 N.Y.2d 38, 44-45 (N.Y. 1985) (adopting Restatement (Second) Contracts §

302).  Under the Restatement, "[u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 988 F. Supp. 367, 371 (S.D.N.Y. 1997) (citations omitted).  Furthermore, "[w]hen determining the intentions of the contracting parties, the intention of the promisee governs."  Id. (citing Fourth Ocean, 485 N.E.2d at 212, 66 N.Y.2d at 44-45).

       The Court, having examined carefully the SAC and its attachments, and construing its factual allegations in the light most favorable to Plaintiffs, finds that Plaintiffs have proffered sufficient facts to plead plausibly the third-party beneficiary status of Mobile and Innovations.  The MSA and the LDA, which is an agreement between eBet and Mobile and Innovations, cross reference each other a number of times, and terms defined in the LDA are utilized in the MSA.  Section 12 of the MSA, for example, provides that Holdings will provide a non-exclusive license to certain software to eBet pursuant to the terms of the LDA.  Furthermore, "the circumstances indicate that the promisee [Holdings] intend[ed] to give the beneficiar[ies] the benefit of the promised performance" under the MSA.  See Muhlrad v. Mitchell, No. 96 CV 3568 (DLC), 1997 WL 182614, at *5 (S.D.N.Y. Apr. 14, 1997) (citing Restatement (Second) of Contracts § 302(1) (1981)).  Plaintiffs allege that Holdings would not have entered into the MSA but for the fact that it conducted its operations through, and intended to benefit, its subsidiaries Mobile and Innovations.  The SAC alleges that eBet had contracted to provide services that would otherwise have been performed by the subsidiaries and that, because

of eBet's alleged breach of its obligations under the MSA, the subsidiaries were forced to devote personnel and financial resources to fill the gap.  The SAC thus, albeit inartfully, alleges sufficient facts to support Plaintiffs' claims of third-party beneficiary status and damages on the part of Mobile and Innovations.  <u>See</u>, <u>e.g.</u>, <u>Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.</u>, 925 F.2d 566, 573 (2d Cir. 1991) ("An intended third party beneficiary will be found when it is appropriate to recognize a right to performance in the third party and the circumstances indicate that the promisee intends to give the third party the benefit of the promised performance.").  Defendants' motion is denied insofar as it seeks dismissal of claims asserted by Mobile and Innovations.

Scope of Breach of Contract Claim

        Defendants argue that Plaintiffs' breach of contract claim must be dismissed insofar as it seeks the recovery of anything other than equipment lease costs under the MSA, asserting that Plaintiffs' claims relating to recovery of other expenses are precluded by the MSA.  Plaintiffs' breach of contract claim is governed by New York law, pursuant to Section 27 of the MSA.  "Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach."  <u>Beautiful Jewellers Private Ltd. v. Tiffany & Co.</u>, 438 F. App'x 20, 21-22 (2d Cir. 2011) (citing <u>First Invs. Corp. v. Liberty Mut. Ins. Co.</u>, 152 F.3d 162, 168 (2d Cir. 1998)).  Plaintiffs allege that Defendants breached the MSA by (a) failing to render the services they were obligated to provide under sections 3.1, 4.1, and 5.1 of the MSA, and (b) refusing to reimburse Plaintiffs for costs borne by Mobile and Innovations, among other costs.  The Court will address each claim in turn.

With respect to Plaintiffs' first breach of contract allegation, it is undisputed that eBet and Holdings are parties to the MSA. Nor does eBet deny that it had obligations to provide services under sections 3.1, 4.1 and 5.1 of the MSA. Plaintiffs allege that Holdings performed its obligations under the MSA but that eBet did not perform its services as required under sections 3.1, 4.1 and 5.1 and that, because eBet breached the contract by delegating its obligations to Mobile and Innovations rather than providing the services directly, Plaintiffs were damaged by being forced to incur and carry additional personnel and other expenses that would otherwise have been eBet's responsibility. Plaintiffs have, thus, proffered "well-pleaded factual allegations [that] plausibly give rise to an entitlement to relief" for breach of contract. Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (citing Iqbal, 556 U.S. at 679) (internal quotations omitted). Accordingly, Defendants' motion is denied with respect to Plaintiffs' breach of contract claim as it relates to eBet's failure to perform its duties pursuant to sections 3.1, 4.1, and 5.1 of the MSA

Plaintiffs' assertion that Defendants breached the MSA by refusing to reimburse Holdings for personnel and other "Chargeback Costs" is, however, precluded by the unambiguous language of the MSA. "Where 'the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law,' and a claim turning on that interpretation may be resolved on a motion to dismiss." Grand Heritage Mgmt., LLC v. Murphy, No. 06 CV 977 (NRB), 2007 WL 3355380, at *4 (S.D.N.Y. Nov. 7, 2007) (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996)). Here, the parties' written agreement clearly limits eBet's contractual obligations to make payments to Sona. In section 18.4 of the MSA, "Sona acknowledges and confirms that there is no agreement, arrangement or understanding in place for eBet (or any member of the eBet group of companies) to provide additional funds to

Sona (or any member of the Sona group of companies) beyond what is specifically provided in clauses 10 and 17 of this Agreement and the fees to be paid to Sona Mobile, Inc., under the License Agreement." Section 10 provides for reimbursement of specified equipment lease payments and related expenses; section 17 is an indemnification provision relating to claims and expenses arising from faulty contract deliverables. Sections 26.1 and 26.2 provide that the MSA supersedes all prior agreements and require that any subsequent modifications be in writing and signed by the parties: "This Agreement [the MSA] and any document referred to in this Agreement constitutes the entire understanding between the Parties with respect to its subject matter, and supersedes all prior agreements, negotiations and discussions between the Parties relating to it. Save as expressly provided in this Agreement, no amendment or variation it [sic] is effective unless in writing and signed by a duly authorised representative of the Parties." (MSA §§ 26.1, 26.2.) Plaintiffs have not pleaded the existence of any such signed modification agreement or amendment. Therefore, to the extent that Plaintiffs' breach of contract claim is premised on any alleged reimbursement undertaking other than those in sections 10 and 17 of the MSA, it fails to state a claim upon which relief may be granted and is dismissed.

The dismissal of such putative contract claims does not, however, limit the damages that Plaintiffs may seek to recover on account of Defendants' alleged breach of their duties under sections 3.1, 4.1 and 5.1 of the MSA, or limit any claim under section 10 of the MSA.

Claim for Breach of the Implied Duty of Good Faith and Fair Dealing

Defendants seek the dismissal of Plaintiffs' claim for breach of the implied duty of good faith and fair dealing, arguing that it is duplicative of the breach of contract claim.

Under New York law, every contract includes an implied duty of good faith and fair dealing, and "[e]ncompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Dalton v. Educ. Testing Serv., 663 N.E.2d 289, 291, 87 N.Y.2d 384, 389 (N.Y. 1995) (citations and internal quotations omitted).  "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." Id.  In determining whether a party has acted arbitrarily, courts often consider whether a party has exercised its contractual right of discretion malevolently or in bad faith in order to deprive other parties of the benefit of their bargain. See Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 333-34 (S.D.N.Y. 2010) (citing Richbell Info. Servs., Inc. v. Jupiter Partners, L.P., 765 N.Y.S.2d 575, 587 (App. Div. 1st Dep't 2003)).  However, "[a] cause of action for breach of the implied duty of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract'" and is thus duplicative. The Hawthorne Grp., LLC v. RRE Ventures, 776 N.Y.S.2d 273, 276 (App. Div. 1st Dep't 2004) (citations omitted); see Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc., No. 05 Civ. 8510 (DAB), 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007) (dismissing breach of implied covenant claim as duplicative); Serdarevic, 760 F. Supp. 2d at 334 (circumstances under which breach of covenant claim should be dismissed as duplicative) (citing, e.g., Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 894 N.Y.S.2d 47, 49–50 (App. Div. 1st Dep't 2010)). Furthermore, any purported obligation that is inconsistent with the other, express terms of the contract cannot be implied. See Dalton, 663 N.E.2d at 292, 87 N.Y.2d at 389; cf. Teachers Ins. & Annuity Ass'n of America v. Wometco Enters., 833 F. Supp. 344, 349 (S.D.N.Y. 1993) ("[I]n

the absence of explicit contractual language stating that a party may not unreasonably withhold consent, parties may withhold consent [or a contractual right granting discretion] for any reason or no reason, and . . . no implied obligation to act in good faith exists to limit that choice.").

Plaintiffs' claims for breach of the implied duty of good faith and fair dealing run afoul of both principles.  In their Second Claim for Relief, Plaintiffs assert that "Sona expected reimbursement" for the costs it incurred in providing the services that eBet had contracted to provide, characterizing the failure to reimburse as a breach of the implied covenant of good faith and fair dealing.  (SAC ¶¶ 63-64.)  Sona's reimbursement claim is subsumed in its claimed damages for Defendants' alleged breach of their express contractual obligations, and it seeks to enforce an alleged obligation that is inconsistent with the express terms of the MSA.  The second prong of Plaintiffs' breach of implied covenant claim is premised on Defendants' failure to "hire Sona's technical employees and assume the associated compensation obligations."  (Id. ¶ 65.)  Plaintiffs' assertion that Defendants breached an implied contractual covenant by failing to hire Sona's employees is likewise inconsistent with the express terms of the MSA, which provides that Defendants "shall have the right (but not the obligation) to offer employment . . . to the . . . staff of Sona."  (MSA § 8.1.)

Plaintiffs thus fail to state a breach of implied covenant claim upon which relief may be granted, and the Second Cause of Action is dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is granted as to those elements of the First Cause of Action (breach of contract) that are premised on any alleged contractual obligation to reimburse Plaintiffs for expenses other than those specified in sections 10 and 17 of the MSA, and is granted as to the Second Cause of

Action in its entirety.  The motion is denied in all other respects.

This Memorandum Opinion and Order resolves docket entry number 71.

This case remains referred to Magistrate Judge Freeman for General Pretrial Management.  The parties are directed to contact Judge Freeman's chambers promptly to schedule a conference.

SO ORDERED.

Dated: New York, New York
       November 6, 2014

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        United States District Judge